UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA KAY JONES,<br><br>           Plaintiff,<br><br>           v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>           Defendant. | Case No. ED CV 13-722-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.
## **INTRODUCTION**

On April 23, 2013, plaintiff Linda Kay Jones filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of disabled widow's benefits. Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of a treating physician; and

(2) whether the ALJ erred at step four. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-10; Defendant's Memorandum in Support of Defendant's Answer and in Opposition to Plaintiff's Memorandum in Support of Complaint ("D. Mem.") at 2-11.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of the treating physician and did not err at step four. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty years old on her alleged disability onset date, has an eleventh-grade education. AR at 48, 174. Plaintiff has past relevant work as a housekeeping supervisor, housekeeper, and caregiver. *Id*. at 42-44.

On November 8, 2010, plaintiff filed an application for disabled widow's benefits, alleging an onset date of August 3, 2010, due to tachycardia, pancreatitis, carpal tunnel syndrome in the right hand, and cyst on the right hand. *Id.* at 48-49. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* 59-62, 64-68, 70.

On June 18, 2012, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 21-46. The ALJ also heard testimony from Abbe May, a vocational expert ("VE"). *Id.* at 39-45, 137. On June 27, 2012, the ALJ denied plaintiff's claim for benefits. *Id.* at 9-16.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 3, 2010, the alleged onset date. *Id.* at 11.

At step two, the ALJ found that plaintiff suffered from the following severe

impairments: history of hypertension, tachycardia, epilepsy, pancreatitis, and alcohol abuse; and carpal tunnel syndrome of the right wrist. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 12.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the RFC to perform a range of light work, with the limitations that plaintiff: could lift/carry twenty pounds occasionally and ten pounds frequently; could stand/walk four hours in an eight-hour workday with customary breaks; could sit six hours in an eight-hour workday with customary breaks; must avoid ladders, ropes, scaffolds, exposure to unprotected heights, and hazardous moving machinery; and could frequently use her dominant right hand for fine and gross manipulations. *Id*.

The ALJ found, at step four, that plaintiff could perform her past relevant work as a housekeeping supervisor as generally performed. *Id.* at 15-16.

Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.* at 16.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Provided Specific and Legitimate Reasons for Rejecting the Opinion of the Treating Physician

Plaintiff complains that the ALJ failed to properly consider the opinion of her treating physician, Dr. Prem Salhotra. P. Mem. at 2-8. Specifically, plaintiff contends that the ALJ failed to specifically reject Dr. Salhotra's opinion that she was permanently incapacitated, and that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for according no weight to Dr. Salhotra's findings. *Id.* The court disagrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*,

81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. **Dr. Salhotra**

Dr. Salhotra, an internist, treated plaintiff from June 2010 through February 2012. AR at 210, 296; *see* P. Mem. at 3-4. Throughout the two years, Dr. Salhotra diagnosed plaintiff with, inter alia, hypertension, carpal tunnel syndrome of the right hand, gastrointestinal reflux disease, hyperthyroid, chronic back pain, and seizures. *See* AR at 204-10, 294, 296-302. In a Medical Report submitted to the San Bernardino County Transitional Assistance Department, dated August 31, 2011, Dr. Salhotra indicated that plaintiff suffered from chronic back pain and seizures and checked the permanent incapacity box. *Id.* at 294.

### 2. **Dr. Safavi**

Dr. Haleh Safavi, a consultative internist, examined plaintiff on March 4, 2011, but did not review any medical records. *Id.* at 213-18. Plaintiff complained of hypertension, a rapid heart rate, problems with her right hand, and a history of thyroid problems. *Id.* at 213-14. At the time of the examination, plaintiff was taking medication for her high blood pressure, chest pain, heart rhythm problems, and pain. *Id*. at 214. Dr. Safavi observed that plaintiff's right wrist showed a positive Tinel sign and had two lumps, but there was no evidence of hand muscle atrophy, her hand grip strength was acceptable, and she had a normal range of

motion. *Id*. at 216. Dr. Safavi also observed that palpation along plaintiff's paravertebral muscles and midline along the spinous process did not elicit pain or evidence of spasm, and plaintiff's range of motion along her back and neck were within normal limits. *Id.* Dr. Safavi's diagnostic impression was that: plaintiff had a history of hypertension, cardiac problems, and palpations; plaintiff had elevated blood pressure during the examination; plaintiff may have had an underlying cardiac problem but the abnormal EKG did not show significant sign of a specific arrhythmia; plaintiff suffered from a mild carpal tunnel syndrome as well as some cystic changes; and plaintiff's heart palpations might be caused by a thyroid problem but the examination did not yield any significant evidence of hypo or hyperthyroidism. *Id*. at 217.

Based on his examination, Dr. Safavi opined that plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently and walk/stand for four hours out of an eight-hour day. *Id.* at 218. Dr. Safavi further opined that plaintiff should avoid ladders, working at unprotected heights, and working with heavy, dangerous, or moving equipment, and limit the fine and gross manipulaiton of her right hand to frequent. *Id*.

### 3. Hi-Desert Medical Center

On four occasions, plaintiff went to the emergency department at Hi-Desert Medical Center. On July 11, 2010, plaintiff complained of headaches and facial pain, and was diagnosed with a headache and alcohol intoxication. *Id.* at 241-45.

Plaintiff was admitted into the hospital from October 10, 2010 through October 15, 2010 after complaining of nausea and vomiting. *Id*. at 225-40. During a cardiovascular consultation, plaintiff reported a history of epilepsy with the last seizure occurring a year prior. *Id*. at 232. Upon discharge, the hospital diagnosed plaintiff with acute pancreatitis, acute gastritis, alcoholism, hypertension, cardiac arrhythmia – tachydaria, seizure disorder, macrocytic

anemia, chronic obstructive pulmonary disease, abnormal liver function test, and hypokalemia. *Id*. at 225.

On May 3, 2011, plaintiff was admitted into the hospital after suffering a single, isolated seizure that lasted for seconds due to her failure to take her medication. *See id*. at 275-92. A CT of plaintiff's brain showed minor atrophy about the bilateral sylvian fissures but was otherwise normal. *Id.* at 276. A CT of the cervical spine yielded normal findings. *Id.* at 288-91.

On August 6, 2011, plaintiff complained of decreased mental status. *Id.* at 311-13. The physicians determined that plaintiff suffered from hypokalemia and alcohol intoxication. *Id.* at 312.

### 4. The ALJ's Findings

The ALJ concluded that plaintiff had the severe impairments of: history of hypertension, tachycardia, epilepsy, pancreatitis, and alcohol abuse, and carpal tunnel syndrome of the right wrist.[2] AR at 11. In reaching that determination, the ALJ gave great weight to the opinion of Dr. Safavi and no weight to Dr. Saholtra's opinion in the Medical Report. *Id.* at 14-15. The ALJ explicitly gave no weight to Dr. Saholtra's opinion that plaintiff was permanently incapacitated due to back pain and seizures because it was inconsistent with the treatment records, it was

---

[2] Plaintiff also raises a subissue that the ALJ erred at step two by failing to find that she suffered from the severe impairment of back pain. P. Mem. at 4. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290. Plaintiff's treatment notes reflect consistent complaints of back pain. *See, e.g.*, AR at 204-10, 296-302. Thus, the court agrees the ALJ may have erred by not finding that plaintiff's back pain was severe at step two. Even assuming that the ALJ erred, however, such error would be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'"). As discussed *infra*, there was no evidence that plaintiff suffered any exertional or non-exertional limitations resulting from her back pain.

vague and imprecise, and it was not supported by the objective evidence and record as a whole.[3] *Id.*

As an initial matter, the ALJ correctly noted that it was within his purview, and not the physician's, to make the ultimate disability determination. *Id.* at 15; 20 C.F.R. § 404.1527(e). But the ALJ still must provide specific and legitimate reasons when rejecting a physician's opinion. *See Smith v. Astrue*, No. 10-4463, 2011 WL 5294848, *4 (N.D. Cal. Nov. 3, 2011) ("Although the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, an ALJ must provide 'specific and legitimate reasons for rejecting the opinion of the treating physician.'") (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ's reasons for rejecting Dr. Saholtra's opinion were specific and legitimate and supported by substantial evidence.

First, the ALJ correctly found that Dr. Salhotra's opinion was not supported by the treatment notes. *See Tonapetyan*, 242 F.3d at 1149 (finding that it may be a sufficient reason to reject a treating physician's opinion when it is unsupported by clinical findings). Regarding plaintiff's back pain, Dr. Salhotra's notes reflect that plaintiff complained of back pain on a regular basis, and as the ALJ noted, based on these subjective complaints Dr. Salhotra prescribed narcotic medications. AR at 14, 204-06, 296-302. But other than complaints of back pain and one note that plaintiff had tenderness, the treatment notes do not reflect any limitations or difficulties that plaintiff had due to the back pain. *Id.* Indeed, Dr. Salhotra did not

---

[3] Plaintiff contends that one reason the ALJ rejected Dr. Salhotra's opinion was because the Medical Report was not completed in support of her disability application, but for another purpose. P. Mem. at 6. Plaintiff misconstrues the ALJ's decision. The ALJ merely noted that the Medical Report was submitted to the San Bernardino County's Department of Transitional Assistance Department, but did not cite that as a reason for rejecting it. *See* AR at 15.

9

appear to conduct any tests on plaintiff's back other than on one occasion, and even then, Dr. Salhotra found that plaintiff's spine, joints, and extension were within normal limits. *Id.* at 297; *see id.* at 14. Dr. Salhotra's colleague observed tenderness on one occasion, but also did not note any limitations. *Id.* at 299.

As for plaintiff's epilepsy, as the ALJ noted, the treatment notes reflect that plaintiff never sought treatment for epilepsy from Dr. Saholtra or even mentioned epilepsy. *Id.* at 14, 204-10, 296-302. The only occasion plaintiff appeared to have relayed that she had a history of seizures to Dr. Saholtra was during her October 2010 admission to Hi-Desert Medical Center for nausea, vomiting, and abdominal pain. *See id.* at 232, 235. Dr. Saholtra was one of plaintiff's treating physicians during this admission, during which she reported that she had a history of epilepsy and her last seizure was a year prior. *See id.* at 232, 235-38.

Second, the ALJ rejected Dr. Salhotra's Medical Report on the basis it was vague and imprecise because Dr. Saholtra did not explain how he reached his conclusion. *Id.* at 15; *see Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"). Here, Dr. Salhotra's opinion was conclusory. He simply checked off a box stating that plaintiff was permanently incapacitated. AR at 294. Dr. Salhotra neither cited any findings to support his conclusions nor any functional limitations. *See id.*

Finally, the ALJ rejected Dr. Salhotra's opinion because it was not supported by the objective medicine and the record as a whole. *Id.* at 15; *see id.* at 14; *Magallanes*, 881 F.2d at 751-54 (inconsistency with the medical record is a specific and legitimate reason for rejecting an opinion). As discussed *supra*, Dr. Salhotra's findings did not reflect any objective findings that plaintiff was incapacitated due to either back pain or epilepsy. Similarly, the remainder of the

record also does not contain any objective evidence to support Dr. Salhotra's opinion. With respect to the back pain, Dr. Safavi found no evidence of kyphosis, lordosis, or noticeable scoliosis. AR at 216. Dr. Safavi noted that "[p]alpatation along the paravertebral muscles and midline along the spinous process did not elicit pain or evidence of spasm," the straight leg raise was negative, and plaintiff had normal ranges of motion in the back and neck. *Id.* A CT scan showed some moderate uncinate arthrosis and an osteophyte, but otherwise normal findings. *Id.* at 288-89. As for epilepsy, the record reflects only one instance of a seizure, which lasted seconds and was due to plaintiff's failure to take her anticonvulsant medication. *Id.* at 292.

Accordingly, the reasons the ALJ provided for rejecting Dr. Saholtra's opinion were specific and legitimate, and supported by substantial evidence.

**B.     The ALJ Did Not Err at Step Four**

Plaintiff argues that the ALJ erred at step four because the ALJ's determination that she could perform her past relevant work as housekeeping supervisor was inconsistent with her limitations and the Dictionary of Occupational Titles ("DOT"). P. Mem. at 8-10. Plaintiff specifically contends that the ALJ had concluded that plaintiff had the RFC to stand and walk four hours in an eight-hour workday but a housekeeping supervisor position would require her to stand and/or walk six hours. *Id.* at 9.

At step four, the ALJ must determine whether a claimant's RFC allows her to return to her past relevant work. *Lester*, 81 F.3d at 828 n.5; 20 C.F.R. § 404.1520(a)(4)(iv). A claimant has the burden of establishing that she cannot "return to [her] former *type* of work and not just to [her] former job." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986); *see also Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990) (citing *id.*) ("The burden of establishing disability is initially on the claimant, who must prove that she is unable to return to her former

type of work."). The ALJ, however, must make findings of fact regarding a claimant's RFC, the physical and mental demands of claimant's past relevant work, and whether claimant can return to her past, relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002); *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). A claimant is typically the primary source for determining how a job was actually performed. Social Security Ruling ("SSR") 82-62.[4] But when determining how a job is generally performed, the ALJ can rely on the descriptions given by the DOT or a VE. *See id*; *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (the DOT is the rebuttable presumptive authority on job classifications).

Nonetheless, a claimant is entitled to challenge an ALJ's classification of her past relevant work under the DOT. *See Villa*, 797 F.2d at 798; *see also, e.g.*, *Goodenow-Boatsman v. Apfel*, No. 99-4776, 2001 WL 253200, at *7 (N.D. Cal. Feb. 27, 2001) (a claimant "may challenge the ALJ's classification of her past relevant work according to the DOT"). A claimant "may overcome the presumption that the Dictionary's entry for a given job title applies to [her] by demonstrating that the duties in [her] particular line of work were not those envisaged by the drafters of the category." *Villa*, 797 F.2d at 798. If the ALJ incorrectly categorizes plaintiff's occupation under a DOT job title, "then the description applicable to that category is irrelevant to the determination of the exertional capacities required in [her] former occupation." *Id.* (quotation omitted).

---

[4] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan*, 246 F.3d at 1203 n.1(internal citations omitted).

During the hearing, in response to a hypothetical about an individual with the same RFC as plaintiff except the individual could sit for eight hours, the VE testified that plaintiff could perform her past relevant work of housekeeping supervisor (DOT 187.167-046) as generally performed, but not as actually performed. AR at 42-44. The VE explained that plaintiff had a composite job comprised of both housekeeping supervisor and housekeeper, and plaintiff could only perform the housekeeping supervisor position. *Id.* at 44.

Plaintiff does not challenge the VE's characterization of her past relevant work as a housekeeping supervisor. Instead, plaintiff argues that the VE's testimony was inconsistent with the DOT and her limitations because a housekeeping supervisor position would require her to stand and/or walk six hours out of an eight-hour workday. P. Mem. at 9-10.

The DOT description of a housekeeping supervisor does not indicate that plaintiff would be required to stand and/or walk six hours a day and therefore does not support plaintiff's argument.[5] Consequently, plaintiff bases her argument on SSR 83-10, which specifies that light work requires "frequent lifting and carrying

---

[5] According to the DOT, the duties of a housekeeping supervisor are: "Establishes standards and procedures for work of housekeeping staff, and plans work schedules to ensure adequate service. Inspects and evaluates physical condition of establishment, and submits to management recommendations for painting, repairs, furnishings, relocation of equipment, and reallocation of space. Periodically inventories supplies and equipment. Reads trade journals to keep informed of new and improved cleaning methods, products, supplies, and equipment. Organizes and directs departmental training programs, resolves personnel problems, hires new employees, and evaluates employees performance and working relationship. Maintains records and prepares periodic activity and personnel reports for review by management. Coordinates activities with those of other departments. May select and purchase new furnishings. May evaluate records to forecast department personnel requirements, and to prepare budget. May perform cleaning duties in cases of emergency or staff shortage." DOT 187.167-046

of objects weight up to 10 pounds," and "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the *full range* of light work requires standing or walking, off and on, for a total of approximately 6 hours out of an 8-hour workday." SSR 83-10 (emphasis added); 20 C.F.R. § 404.1567(b). But the ALJ did not determine that plaintiff could perform the *full range* of light work, but simply "a range of light work." AR at 12. SSR 83-10 defines "frequent" as "occurring more than one-third to two-thirds of the time." SSR 83-10. The ALJ's finding that plaintiff could stand or walk four hours in a workday fell within this range. Moreover, SSR 83-10 also recognizes that not all light work jobs require standing or walking for that amount of time, noting that some jobs may be classified as light "when it involves sitting most of the time with some pushing and pulling of arm and leg controls. SSR 83-10. Thus, there was no inconsistency between the VE's testimony and the DOT, and the ALJ reasonably relied on the VE's testimony.[6]

The ALJ did not err at step four. His finding that plaintiff could perform her past relevant work was supported by substantial evidence.

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: February 19, 2014

SHERI PYM
United States Magistrate Judge

---

[6] Plaintiff also argues that the ALJ's RFC determination fell into the sedentary work level. P. Mem. at 10. The ALJ clearly stated that plaintiff had the RFC to perform a range of light work and his exertional limitations indeed fall in the light work category. AR at 12; *see* 20 C.F.R. § 404.1567(b).

14